UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEEMELL SPENCER

Plaintiff,

v.

CITY OF DETROIT; Dwight Pearson; Sgt. Lovier;
Sgt. Sullivan; Howard Phillips; Sgt. Petersen;
Deborah Nix; Lt. Jackson; J. Fisher; Barbara Simon;
William Rice; Charles Howard; Mark Amos;
Ed Rudoni; Sgt. Visbara; Catherine Adams;
JOINTY AND SEVERALLY,

Defendants.
_____/

Case No. 03-71470

Hon. JOHN CORBETT O'MEARA
MAGISTRATE JUDGE SCHEER

## COMPLAINT AND JURY DEMAND

NOW COME Plaintiff, JEEMELL SPENCER herein, by and through his attorney, CHRISTOPHER J. TRAINOR, and for their cause of action against the Defendants, state as follows:

### GENERAL ALLEGATIONS

1. Plaintiff was at all times hereto a citizen of the United States, resident of Wayne County, State of Michigan.

2. Defendant, City of Detroit, is a governmental subdivision under the laws of the State of Michigan.

3. Defendants, City of Detroit police officers, were at all times mentioned herein employed by the City of Detroit and were acting within the scope of his/her employment, under color of law, and were assigned to the Detroit Police Department.

4. Defendants, certain unknown other City of Detroit police officers, were at all times mentioned herein, employed by the City of Detroit and were acting within the scope of his/her employment, under color of law, and were assigned to the Detroit Police Department.

5. All of the events giving rise to this lawsuit occurred in the City of Detroit, County of Wayne, State of Michigan.

6. At all material times, Defendants acted under color of state law, statutes, ordinances, policies, procedures, and usages of the State of Michigan, County of Wayne, City of Detroit.

7. Jurisdiction is vested in this Court pursuant to 28 U.S.C. §1331 [federal question], 28 U.S.C. §1343 [civil rights].

8. Plaintiff's claims arise pursuant to federal statute 42 U.S.C. §1983, the Fourth and Fourteenth Amendments of the United States Constitution, and the statutes and common law of the State of Michigan.

## FACTS

9. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

10. On April 27, 2000 around 10:30 p.m., the Amoco gas station on Mack in the City of Detroit was robbed.

11. Right after the Amoco robbery, the same perpetrators who committed that robbery left the gas station and went next door to the Super City Coney Island and shot Leon Woodard in both legs and murdered Reed Byrd.

12. On April 27, 2000, the following took place that pertains to those crimes:

    a. Around 8:45 p.m., Plaintiff and his cousin, Jemell Spencer (Spencer), went to the Super City Coney Island (Coney), located on the corner of Mack and Conner in the City of Detroit, and ordered some food.

    b. Once they received their food, they went back to Plaintiff's blue 1985 Dodge Ram pick up truck to eat it.

    c. Around the same time, Leon Allen Woodard, Jr. (Woodard) a/k/a Leonard McGlory, arrived at the Coney with his friend Jmo Bracey (Bracey).

    d. Julian Latham (Latham) also arrived at the Coney and talked to Plaintiff and Spencer, and saw one of the perpetrators enter the Coney.

    e. Shortly after Latham arrived at the Coney, he left to go to the Amoco gas station.

    f. During this period of time, Reed Byrd (Byrd) was sitting in his Escort parked in front of the Coney waiting for Feanda Wilson (Wilson), the waitress at the Coney.

    g. Before the shootings and robbery took place, Wilson went outside and sat with Byrd in his car and smoked marijuana, then returned to her duties inside the Coney.

    h. Meanwhile, Bracey had also left the Coney and went next door to the gas station.

i. While outside in the parking lot, as Bracey was walking toward the gas station, he saw three men coming up from behind him, and thought he was going to be robbed.

j. Bracey managed to get to the gas station, and gave his gold chain to the man behind the counter and told him to call 911, that he's going to be robbed.

k. John Anderson (Anderson) was already in the gas station.

l. At the same time that Bracey saw the three men coming up behind him, Latham was also outside in the parking lot, on his way to the gas station.

m. One of the three men who were coming up behind Bracey, called out to Latham, and Latham recognized him.

n. Latham talked to the guy, and noticed that one of the two other guys in the parking lot, he had just seen in the Coney.

o. Latham heard those two guys talking to each other about robbing someone at the gas station for his coat and gold chain, so Latham left.

p. Then those same guys went to the gas station and robbed Bracey and Anderson at gunpoint.

q. After the robbery at the gas station, two of the men who robbed the gas station went back to the Coney.

r. Woodard was still in the Coney when one of the perpetrators entered, and robbed and shot him in both legs.

s. Shortly after Woodward was shot, the same perpetrators murdered Byrd while he was sitting in his Escort and still parked in front of the Coney.

13. Before Plaintiff was arrested on April 28, 2000, Defendants had obtained descriptions of the perpetrators and statements from Wilson, Bracey, and Anderson

14. The descriptions of the perpetrators that the witnesses gave police were not of plaintiff.

15. Before Plaintiff was arrested, Wilson had told Defendants that the perpetrators left in a late '80's, early '90's blue F 150 pick up.

16. Before Plaintiff was arrested on April 28, 2000, Defendants knew of three witnesses, Marion Benton, Dwight Bass, and Lana Kennedy, whom the perpetrators ran past as they escaped, but Defendants did not interview them or have them review possible suspects in line ups.

17. Defendants also knew that Latham did not identify Plaintiff as the perpetrator of the robbery or shooting.

18. Before Plaintiff was arrested on April 28, 2000, Defendants dusted Byrd's Escort for fingerprints.

19. Notwithstanding the above information, on April 28, 2000, Defendants handcuffed and arrested Plaintiff without a warrant and without probable cause.

20. Defendants also seized the blue 1985 Dodge Ram pick up without a warrant and without probable cause.

21. Defendants interviewed Plaintiff at 1300 Beaubien for a maximum of fifteen (15) minutes.

22. Defendants told Plaintiff, "Don't worry about it, you don't look like what she described."

23. Plaintiff kept telling Defendants that he didn't do anything.

24. Plaintiff was never Mirandized and never told he was under arrest.

25. On or before May 10, 2000 Defendants had the following additional information:

a. Wilson, Bracey, Tristan Spires, and David Andrews all told Defendants the perpetrators got into a blue F 150 in the Coney parking lot and sped away.

b. Defendants ignored this fact; and instead zeroed in on the 1985 blue Dodge Ram pick up and determined it was the get-away vehicle used by the perpetrators.

c. This truck belonged to Plaintiff's wife, and to no ones surprise, Defendants found one fingerprint of Plaintiff's on the 1985 Dodge Ram pick up.

d. That Anderson, Bracey, and Latham gave statements that Plaintiff was not there at the time of the shootings and not involved in the shootings.

e. That prints and evidence Defendants obtained from Byrd's Escort should have been Plaintiff's, because according to Wilson's statement and testimony, Plaintiff allegedly had his hands on the passenger door.

f. That Plaintiff's prints were never found on the Byrd's Escort.

g. That Defendants never investigated or identified the prints they did have from Byrd's Escort.

h. They believed Wilson's statement was "out of place", and by May 5, 2000, they knew she had been fired from the Coney for stealing money from it.

i. That Joe Louis McConley/McClealy at two different live show ups identified Octavius Heard as the one who told him, "'Go around the corner, I'm serious', and cocked the pistol".

j. That Krista Moss identified Octavius Heard at a live show up, as the one who held the gun to her head and robbed her.

k. That Bracey pointed out Octavius Heard as the shooter.

26. On May 2, 2000, Defendants set up a polygraph for Wilson to "see if she was lying about the two suspects the warrant was typed on", (Plaintiff and Spencer).

27. Defendants never asked Woodard, Anderson, Bracey, Tristan Spires, and David Andrews to view a line up to identify possible suspects of the robbery and shootings.

28. Not until May 2, 2000 did Defendants have Latham view a line up, and at which time he did not identify Plaintiff as being the perpetrator of the robbery or shootings.

29. Defendants never asked Latham to view a line up with Octavius Heard in it.

30. Furthermore, in their Investigator's Report, Defendants described the get-away away vehicle as a dark blue pick up, knowing that four (4) witnesses described the get-away vehicle as a blue Ford 150, not a Dodge Ram.

31. Defendant's twisted, misrepresented and falsified witness statements.

32. Defendant's presented evidence that was false and misleading when applying for an arrest warrant.

33. That certain officers told Plaintiff's family Plaintiff was being arrested as he was a witness.

34. Plaintiff was in jail from the time of his arrest on April 28, 2000 until his trial, March 28, 2001, and a jury found him not guilty.

35. Defendants other statements in their Investigator's Report were misleading, fraudulent, and intentionally slanted to appear as though Plaintiff was guilty.

36. That the Defendants, police officers, heretofore mentioned were acting as employees of the City of Detroit, and had a duty to perform their employment activities so as not to cause harm to individuals.

37. Notwithstanding Defendants' duties to perform their employment activities so as not to cause harm to individuals, Defendants breached their duty by acting deliberately, indifferent, reckless, and/or grossly negligent without regard to Plaintiff's constitutional rights and welfare.

38. Defendants knew or should have known that presenting inaccurate misleading evidence to the court would cause the initiation of a malicious prosecution, the false arrest and imprisonment and that their acts constituted a breach of their duties that would cause harm to Plaintiff, as he was illegally seized.

39. Defendants had a special relationship with Plaintiff in that: (a) they arrested him and were therefore responsible for his safety and welfare; (b) using their State power, they threatened and interrogated him knowing they had no evidence that connected him to their murder investigation; (c) they threatened him with life imprisonment; (d) they had complete control of him.

40. Defendants had complete control over the investigation of the case, who they would investigate, when they would investigate, what evidence they would collect, what they would do with the results of the evidence, and therefore, ultimately, they had complete control over whether Plaintiff was accused, arrested and tried.

41. Defendants breached their duty by failing to properly investigate a murder when they ignored known facts, they are: (a) Plaintiff did not match the physical description of the perpetrators; (b) they did not interview known witnesses; (c) they did not hold line ups for the witnesses who could identify the perpetrators; (d) they had witnesses who told them that Plaintiff was not involved in the crimes; (e) they had no evidence connecting Plaintiff to the crime scene even after his illegal arrest; (f) they knew Wilson's statement

was out of place with other witnesses statements; (g) of those witnesses they did bring to a line up, they all identified another as the perpetrator with the gun; (h) they did not find Plaintiff's fingerprints on Byrd's car, where according to their star and only witness, they should have found them; (i) they did not investigate Plaintiff's alibi; and (j) they knowingly provided misleading information to the court to obtain a warrant.

42. Defendant's either acted in concert and/or failed to stop other Defendant's from their unconstitutional actions.

## COUNT I
### VIOLATION OF THE UNITED STATES CONSTITUTION
### FOURTH AMENDMENT, 42 U.S.C. §1983
### WARRANTLESS SEARCH AND SEIZURE WITHOUT PROBABLE CAUSE

43. Plaintiff incorporates by reference all allegations in this complaint.

44. The Fourth Amendment of the United States Constitution establishes that Plaintiff has the right to be free from deprivation of life, liberty and bodily security without due process of law and to be free from unreasonable searches and seizures without oath or affirmation.

45. The Fourth Amendment requires that the deprivation of life, liberty and bodily security be caused by a state actor; that the deprivation is unreasonable if the state acts without a warrant, unless there is probable cause or exigent circumstances considering the totality of the circumstances.

46. At all material times, Defendants acted under color of law and unreasonably when they violated Plaintiff's Fourth Amendment rights when they arrested Plaintiff and seized his wife's vehicle without a warrant, and without probable cause or exigent circumstances.

47. Defendants acted unreasonably and failed in their duty to investigate the alleged crime when they arrested Plaintiff without considering the totality of the circumstances.

48. Defendants acted under color of law and violated Plaintiff's clearly established Fourth Amendment right to be free from unreasonable searches and seizures when they conducted a warrantless search and arrest of Plaintiff.

49. A reasonable officer would have known that a warrant or probable cause was required before they could arrest Plaintiff and seize his wife's vehicle.

50. Defendants are not entitled to qualified immunity for their non-testimonial acts of misstating their Investigator's Report to influence the appearance of Plaintiff's guilt so that a warrant could issue and in providing false evidence to a magistrate so that probable cause could be established.

51. Defendants are not entitled to qualified immunity as state actors, and can be sued in their individual capacity for violation of Plaintiff's clearly established Fourth Amendment Constitutional right to be free from unreasonable search's and seizures.

52. Defendants' illegal acts were the direct and proximate cause of Plaintiff's deprivation of liberty, and illegal incarceration and prosecution.

53. The facts as set forth in the preceding paragraphs constitute a violation of Plaintiff's Fourth Amendment rights and pursuant to 42 U.S.C. §1983, Plaintiff respectfully requests this court to award exemplary, compensatory, and punitive damages, plus costs, interests, and attorney fees as set forth in 42 U.S.C.§ 1988.

## COUNT II

### VIOLATION THE UNITED STATES CONSTITUTION
### FOURTH AMENDMENT, 42 U.S.C. §1983
### MALICIOUS PROSECUTION/RETALIATION

54. Plaintiff incorporates by reference all allegations in this complaint.

55. At all times relevant, Plaintiff was incarcerated from April 28, 2000 until a jury found him not guilty in March 2001.

56. As stated in the above-mentioned facts, Defendants had neither actual knowledge nor probable cause to believe a charge of murder would succeed and acted unreasonably when they initiated a malicious prosecution of Plaintiff in which a jury found him not guilty.

57. Defendants failed to properly investigate; they manufactured probable cause, and incarcerated Plaintiff.

58. Defendants were the initiators of Plaintiff's prosecution because they presented their unfounded facts from their negligent investigation to the prosecutor.

59. In order to establish probable cause to obtain an arrest warrant, Defendants presented their case in a misleading, false manner and without proper investigation of their leads in this case.

60. Defendants knew they falsely, and recklessly built a case against Plaintiff, and this exemplifies their callous indifference to Plaintiff's life and liberty.

61. Defendants violated Plaintiff's Fourth Amendment right, and as a result of their above-mentioned acts, Defendants were the direct and proximate cause of Plaintiff's malicious prosecution.

62. The facts as set forth in the preceding paragraphs, evidence Defendants malicious prosecution of Plaintiff and a violation of his Fourth Amendment rights.

63. Therefore, pursuant to 42 U.S.C. §1983, Plaintiff respectfully requests this court to award exemplary, compensatory, and punitive damages, plus costs, interests, and attorney fees as set forth in 42 U.S.C. § 1988.

## COUNT III
### VIOLATION OF THE UNITED STATES CONSTITUTION
### FOURTEENTH AMENDMENT, DUE PROCESS, 42 U.S.C. §1983
### MALICIOUS PROSECUTION

64. Plaintiff incorporates by reference all allegations in this complaint.

65. Defendant's deliberately violated Plaintiff's Fourteenth Amendment Due Process rights and "shocked the conscience" when in order to legitimize their illegal arrest of Plaintiff, and as officers sworn to uphold the law, they ignored facts known to them.

66. Defendants conduct "shocks the conscience" because they knew they lacked probable cause to arrest Plaintiff, and when he did not confess, they mislead the court in order to establish probable cause.

67. Defendants conduct was lazy, sloppy, deliberately, indifferent, reckless, and with malice.

68. Therefore, pursuant to 42 U.S.C. §1983, Plaintiff respectfully requests this court to award Plaintiff exemplary, compensatory, and punitive damages, plus costs, interests, and attorney fees as set forth in 42 U.S.C. § 1988.

## COUNT IV
## CITY OF DETROIT'S CONSTITUTIONAL VIOLATIONS

69. Plaintiff incorporates by reference all allegations in this complaint.

70. Defendant, City of Detroit, acted recklessly and/or with deliberate indifference, when they practiced and/or permitted customs and/or policies that resulted in their violations of Plaintiff.

71. These customs and/or policies included, but were not limited to:

    a. Failure to train and supervise its police officers so as to prevent violations of its citizens' constitutional rights;

    b. Failure to supervise, review and/or discipline police officers whom the City of Detroit knew or should have known were violating or were prone to violate citizens constitutional rights, thereby permitting and/or encouraging its police officers to engage in illegal conduct;

    c. Failure to train and institute proceedings to ensure its police officers would conduct proper and legal investigations of crimes;

    d. Failure to train police officers and institute policy against falsifying evidence.

    e. Having a custom or policy of arresting witnesses to get them to cooperate.

   f.  Having a custom or policy of false arrest and imprisonment of certain suspects and/or witnesses who did not provide a certain level of cooperation to City of Detroit Police Officers.

72. Defendants' conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted.

73. Defendants' indifferent acts and/or omissions were the direct and proximate cause of Plaintiff's pain and suffering, humiliation, embarrassment, and mental anguish.

74. For the above reasons, Plaintiff respectfully requests this court to award Plaintiff exemplary, compensatory, and punitive damages, plus costs, interest, and attorney fees as set forth in 42 U.S.C. § 1983 and § 1988.

## COUNT V
### GROSS NEGLIGENCE

75. Plaintiff incorporates by reference all allegations in this complaint.

76. Defendants, heretofore mentioned, were acting as employees of the City of Detroit Police Department, and had a duty to perform their employment activities so as not to endanger or cause harm to Plaintiff.

77. Notwithstanding these duties, Defendants breached their duties when with indifference and gross negligence and without regard to Plaintiff's constitutional rights and welfare, they arrested Plaintiff without probable cause, then maliciously used and slanted evidence to suit their purpose, which was to prosecute and convict Plaintiff.

78. Defendants had a special relationship with Plaintiff because once they arrested him, they were responsible for his safety and welfare but they used their State power to falsely,

maliciously and with gross negligence, and knowing they had no evidence that connected him to their murder investigation, they threatened him with life imprisonment.

79. Defendants had complete control over the investigation of the case, who they would investigate, when they would investigate, what evidence they would collect, what they would do with the results of the evidence, and therefore, ultimately, they had complete control over whether Plaintiff was accused, arrested and tried.

80. Defendants acted recklessly and/or with intentional indifference, when they practiced and/or permitted customs and/or practices that resulted in their unlawful conduct against Plaintiff.

81. These customs and/or practices included, but were not limited to:

   a. Failure to train officers in the proper policies and procedures for effectuating an arrest.

   b. Failure to supervise, review officers' conduct so as to prevent unlawful acts against citizens;

   c. Failure to institute proceedings and establish policy that ensures officers will conduct proper and legal investigations of crimes;

   d. Failure to train officers and institute policy against falsifying evidence.

82. Defendants' conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted.

83. Defendants' indifferent and grossly negligent acts and/or omissions were the direct and proximate cause of Plaintiff's pain and suffering, humiliation, embarrassment, and mental anguish.

84. For the above reasons, Plaintiff respectfully requests this court to award Plaintiff exemplary, compensatory, and punitive damages, plus costs, interest, and attorney fees.

### DAMAGES AND RELIEF REQUESTED

85. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

86. According to the aforementioned facts and as previously stated, Defendants violated Plaintiff's rights as established by the Fourth and Fourteenth Amendments of the United States Constitution, and common law and State laws.

87. Defendants are the direct and proximate cause of the aforementioned violations and unlawful acts against Plaintiff, and pursuant to 42 U.S.C. §1983, Plaintiff has suffered the following injuries:

- Emotional and psychological injury;
- Lost wages;
- Out of pocket losses;
- Lost earning capacity;
- 11 months of unnecessary and illegal incarceration;
- Humiliation, anxiety, fear and embarrassment;
- Injury to reputation;
- Loss of self-worth;
- Physical and economic loss relative court proceedings;
- Loss of quality and enjoyment of life;
- Other damages and injuries.
- Attorney fee's as set forth in 42 U.S.C. § 1988.

Wherefore, Plaintiff respectfully requests this court to award an amount that is fair, just, and reasonable against Defendants for exemplary, compensatory, and punitive damages, in an amount in excess of Seventy Five Thousand Dollars ($75,000) together with interest, costs, and attorney fees.

Respectfully submitted,

*/s/ Christopher J. Trainor*
CHRISTOPHER J. TRAINOR
Attorney for Plaintiff

Dated: April 10, 2003

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable as a matter of law.

Respectfully submitted,

*/s/ Christopher J. Trainor*
CHRISTOPHER J. TRAINOR
Attorney for Plaintiff

Dated: April 10, 2003